UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:25-CV-00061-GNS-HBB

**FRANK WHITAKER, et al.**                                                                **PLAINTIFFS**

**VS.**

**ERIE INSURANCE COMPANY**                                                        **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' motion for leave to amend the Complaint to join two additional parties (DN 23). Defendant has responded in opposition at DN 24 and Plaintiffs have not filed a Reply.

### Nature of the Case

Plaintiffs Frank and Kelly Whitaker purchased a homeowners insurance policy on a farmhouse from Defendant Erie Insurance Company (DN 1-1, ¶¶ 2-3, 5). On October 19, 2023, the Whitakers' home suffered damage (*Id.* at ¶ 6). Erie denied the claim (*Id.* at ¶¶ 8-9) and on April 22, 2025, the Whitakers filed a lawsuit against Erie in state court asserting claims for breach of contract, statutory bad faith, and common law bad faith (*Id.* at ¶¶ 13-29). The case was removed to this Court on May 6, 2025, under diversity jurisdiction (DN 1).

### Plaintiffs' Motion

As part of its defense, Erie contends the Whitakers breached the contract of insurance by failing to timely report the loss (*See generally* Motion for Summary Judgment, DN 13). Plaintiffs seek to amend their complaint to join as defendants The Downs Agency LLC and Scott Essler (DN

23). Their proposed Amended Complaint alleges Downs Agency sold them the Erie policy through its employee Essler (DN 23-1, ¶¶ 5-10). The proposed Amended Complaint alleges further that the Whitakers "timely informed Scott Essler, an employee of Downs Agency LLC, of the loss, who advised them they had six months to file a claim under the terms of the Policy." (*Id.* at ¶ 13). They allege Downs Agency LLC and Essler "knew or should have known the correct standard for filing claims under the policy." (*Id.* at ¶ 41). The Whitakers elaborate in their motion that "[t]he New Defendants incorrectly stated to Plaintiffs they had six (6) months to make a claim, and the New Defendants failed to make Plaintiffs' claim for this instant litigation despite being directed to do so by the Plaintiffs. One of Defendant's main defenses in the instate [sic] case is that the claim was allegedly reported late." (DN 23, p. 1).

The Whitakers contend they learned of Essler's error by way of a December 3, 2025, e-mail to Frank Whitaker from Essler in which "Mr. Essler admits to telling Mr. Whitaker that he had 6 months to file a claim under the policy." (DN 23, p. 2). The Whitakers contend further that

> Additionally, discovery has revealed that Defendant is using the late reporting of the claim as a defense to coverage. This defense is being asserted as a direct result of the actions of the New Defendants, making them necessary parties to this action. Plaintiffs attempted to inform their insurance carrier immediately following the loss, but the actions of the New Defendants rendered this effort futile.

(*Id.* pp. 2-3).

The scheduling order in the case was entered on June 25, 2025, and established a deadline for joining parties and amending pleadings by August 29, 2025 (DN 15, ¶ 2). The Whitakers' motion is thus five months past the deadline. They acknowledge that late filing of the Amended Complaint calls into play both Fed. R. Civ. P. 15(a) which addresses amendment of the Complaint and Rule 16(b)(4) which addresses the amendment of the scheduling order deadline for filing an Amended Complaint (DN 23, p. 1). They note that Rule 16(b)(4) requires a showing of good cause to amend the scheduling order, which they characterize as being comprised of two components:

their diligence and whether Erie will suffer prejudice (*Id.* at pp. 3-4) (citing *Andretti v. Borla Performance Indus.*, 426 F.3d 824 (6th Cir. 2005) and *Garza v. Lansing Sch. Dist.*, 972 F.3d 853 (6th Cir. 2020)). Addressing the predicate Rule 16 standard, the Whitakers argue that "[t]he New Defendants were only recently confirmed to be proper Defendants through new emails, information that was not previously available to Plaintiffs despite diligent investigation. These emails were not in existence until December 3, 2025, clearly no amount of diligence could have discovered them." (*Id.* at pp. 4-5). Turning to the question of whether Erie is prejudiced, the Whitakers contend that, given the discovery deadline of March 16, 2026, ample time remains to engage in discovery and no prejudice ensues. (*Id.* at p. 5).

Concluding that they have demonstrated good cause to amend the scheduling order to permit the late Amended Complaint, the Whitakers next address Rule 15(a)(2)'s mandate that leave to amend a complaint should be freely given when justice so requires (*Id.* at pp. 5-6). Citing *Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, 805 (6th Cir. 2005), the Whitakers identify four elements the Court should consider in granting leave to amend (DN 23, pp. 5-6). These are undue delay or bad faith in filing the motion, repeated failures to cure previously-identified deficiencies, futility of the proposed amendment, and lack of notice or prejudice to the opposing party (*Id.*). As to delay or bad faith, the Whitakers argue that they seek to amend the Complaint "promptly after discovering the need to add two additional defendants." (*Id.* at p. 6). They assert that this is their first request to amend the Complaint, they have not failed to cure any prior deficiencies, and their proposed amendment asserts a viable cause of action against the new defendants (*Id.*). As argued before, they contend Erie is not prejudiced as time remains for discovery. (*Id.*). They conclude that leave to amend should be granted (*Id.* at pp. 6-7).

3

Defendant's Response

Erie disputes that the Whitakers have "newly discovered" any of the information about the new defendants' involvement in the case or Erie's policy defenses (DN 24, p. 1). Erie asserts that the e-mail from Essler dated December 3, 2025, reflects information known to the Whitakers well before the deadline for amending their Complaint (*Id.* at pp. 1-2). Erie points to an "Examination Under Oath" Mr. Whitaker gave on February 5, 2025, in which he indicated he had been under the belief that a six-month reporting window for the loss applied (*Id.*) (citing DN 13-3, pp. 170-171). As to their claim to have newly discovered Erie's reliance on late reporting as a defense to their contract claim, Erie offers the claim denial letter it sent Whitakers' counsel on April 2, 2025, in which it asserted the Whitakers' late reporting of the claim deprived Erie of the ability to investigate before substantial demolition and repair work had already taken place (*Id.*) (citing DN 24-1).

Discussion

Amendment of a pleading is governed by Fed. R. Civ. P. 15(a). However, if the scheduling order's deadline for amending pleadings has passed, a plaintiff must first show good cause under Rule 16(b)(4) before a court will consider whether the proposed amendment is proper under Rule 15(a). *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (citations omitted). "Another relevant consideration is possible prejudice to the party opposing the modification." *Id.* Evaluation of Rule 16's "good cause is not co-extensive with an inquiry into the propriety of the amendment under . . . Rule 15." *Woodcock v. Ky. Dep't of Corr.*, No. 5:12-CV-00135-GNS-LLK, 2016 U.S. Dist. LEXIS 87241, at *3 (W.D. Ky. July 6, 2016) (quoting

4

*Tschantz v. McCann*, 160 F.R.D. 568, 571 (N.D. Ind. 1995)). This "good cause" standard "primarily considers the diligence of the party seeking the amendment. In other words, in order to demonstrate 'good cause' a party must show that despite their diligence the time table could not reasonably have been met." *Id.* (quoting *Tschantz*, 160 F.R.D. at 571).

Determination of whether the Whitakers have been diligent in meeting the scheduling order's deadline for filing an amended complaint turns on the critical questions of what they knew and when they first knew it. In this regard, the e-mail which *they solicited* from Essler well after the expiration of the amendment deadline weighs strongly against them. In the initial e-mail Mr. Whitaker sent Essler on December 2, 2025, he indicates he is "pulling together all my notes for the Erie claim" and "just want to double-check where that six-month reporting window shows up in the Erie policy." (DN 23-2, p. 2). The e-mail continues "**I clearly remember you pointing out a six-month claims-made window in Oct/Nov 2023** and then again when I stopped by the office a month or so ago—you said you'd seen it written in the policy itself but couldn't remember the exact page at the time." (*Id.*) (emphasis added). Thus, per Mr. Whitaker's own statement, Essler advised him in late 2023 that a six-month reporting window applied and the Whitakers were in possession of that knowledge well before they filed suit in state court on April 22, 2025. Rather than proving newly discovered information, the e-mail demonstrates to the contrary that the information had long been known to them.

Nor is Erie's reliance upon a defense that the Whitakers' are foreclosed from pursuing policy benefits as a result of not timely reporting the loss a recent revelation. While the Whitakers' motion contends "discovery has revealed that Defendant is using the late reporting of the claim as a defense to coverage" (DN 23, p. 2), they do not identify what discovery revealed this to them, or when it was first revealed. As Erie has noted, its counsel sent a claim denial letter to the Whitakers'

5

counsel on April 2, 2025, prior to the amendment deadline, setting forth the facts and policy provisions upon which Erie based its denial of the claim due to late reporting (*See* DN 24-1). To the extent the Whitakers contend they were unaware that Erie would take the position that their initial contact with Essler did not constitute a report, the denial letter made this clear:

> Mr. Whitaker failed to comply with this condition precedent in the Policy. Even assuming that Mr. Whitaker made initial contact with his agent within a few days after October 19, 2023 - something that the agent cannot confirm in fact ever happened - per his own testimony Mr. Whitaker told the agent as follows:
>
>> "Of course, we've got another issue that's occurred. I don't have time to report it at this moment. I'm dealing with some other things, but we have had something else occur. We're going to have another claim. ... It's on the property, but I'll get you more details on it."
>
> Per Mr. Whitaker's own testimony, he then failed to get more details to the agent until April 23, 2024 - six months after the identified loss date, and after substantial demolition and repair work had already taken place. His only explanation for this delay, was that "Then I didn't bring it back up and deal with it because I thought I had time."

(*Id.* at p. 5).

In addition is Erie's motion for summary judgment filed on June 12, 2025, in which Erie set forth in detail its argument that it was entitled to deny coverage because the Whitakers violated the terms of the contract by providing late notice. "The policy of homeowners insurance issued by Erie to the Plaintiffs . . . sets out the terms and conditions of the insurance coverage as well as the duties of the insureds. . . . By waiting six months to report the loss, the Plaintiffs breached this condition of the policy." (DN 13-1, p. 2). The Whitakers addressed whether Erie was entitled to deny coverage on the basis of late reporting in their Response filed July 7, 2025, arguing in part that their initial contact with their agent constituted a report of the loss (DN 19, p. 2). It is beyond cavil that the Whitakers were on notice of Erie's late-reporting defense sufficiently in advance of the deadline for amending their Complaint.

6

In sum, the undersigned concludes that the Whitakers have failed to demonstrate diligence so as to be entitled to an extension of time in which to amend their Complaint.

**WHEREFORE**, Plaintiffs' motion to amend the Complaint, DN 23, is **DENIED**.

*H. Brent Brennenstuhl*
**H. Brent Brennenstuhl**
**United States Magistrate Judge**

February 27, 2026

Copies: Counsel

7